IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NICHOLAS HESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 3:14-cv-00727 LJM |
| | ) | |
| THE BOARD OF TRUSTEES OF | ) | |
| SOUTHERN ILLINOIS UNIVERSITY, | ) | |
| CHAD TRISLER, individually and in his | ) | |
| official capacity; | ) | |
| KATHERINE SERMERSHEIM, individually | ) | |
| and in her personal capacity; and | ) | |
| RITA CHENG, individually and in her | ) | |
| personal capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Nicholas Hess ("Hess") has moved for summary judgment on his claims against Defendants, The Board of Trustees of Southern Illinois University ("SIU"), Chad Trisler individually and in his official capacity ("Trisler"), Katherin Sermersheim, individually ("Sermersheim"), and Rita Cheng, individually ("Cheng") (Defendants, collectively, "Defendants").  Dkt. No. 31.  Defendants have also moved for summary judgment on Hess' claims against them.  Dkt. No. 32.  Previously, Defendants filed a Motion to Dismiss that remains pending.  Dkt. No. 27.  For the reasons stated herein, the Court **DENIES** Hess' Motion for Summary Judgment; **GRANTS** Defendants' Motion for Summary Judgment and **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss.

## I. <u>FACTUAL & PROCEDURAL BACKGROUND</u>

### A.  PROCEDURAL HISTORY

On June 24, 2014, Hess filed his Complaint in which he set forth four claims for relief:  Count I:  Due Process; Count II:  Breach of Contract; Count III:  Breach of Duty of Good Faith and Fair Dealing; Count IV:  Punitive Damages.  Dkt. No. 5.  On June 26, 2014, Hess filed his Amended Complaint again alleging the same four claims.  Dkt. No. 6.

On July 18, 2014, rather than filing an Answer, Defendants moved to dismiss the Amended Complaint.  Dkt. No. 12.  On August 18, 2014, Hess both moved to amend his Amended Complaint and responded to Defendants' Motion to Dismiss.  Dkt. Nos. 18 & 19.  On August 19, 2014, the Court granted Hess' Motion to Amend/Correct with leave to file his Second Amended Complaint instanter.  Dkt. No. 20.

On August 20, 2014, Hess filed his Second Amended Complaint in which he alleged the following claims:  Count I:  Due Process – Property Interest; Count II:  Liberty Interest; Count III:  Punitive Damages.  Dkt. No. 22.  On August 22, 2014, the Court issued an order declaring Defendants' Motion to Dismiss moot in light of the filing of Hess' Second Amended Complaint.  Dkt. No. 23.

On September 3, 2014, the Court entered a Scheduling and Discovery Order that adopted the parties' Proposed Scheduling and Discovery Order, as modified ("Scheduling Order").  Dkt. No. 26.

On September 3, 2014, again, rather than filing an Answer, Defendants filed a motion to dismiss the Second Amended Complaint.  Dkt. No. 27.  Defendants claimed that Counts I and II should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil

Procedure ("Rule 12(b)(1)") as against the Board of Trustees because such claims were barred by the Eleventh Amendment.  *Id.* at 2.  Defendants further argued that Hess' Second Amended Complaint failed to plead facts to establish that he had either a property or a liberty interest that entitled him to any due process and that his allegations did not meet the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Dkt. No. 27 at 2-3.  Defendants also presented a qualified immunity argument asserting that the law entitling Hess to the relief he seeks was not clearly established.  *Id.* at 3.

Hess filed his response on September 18, 2014, asserting that he had a protected property interest in continuing his education, which he claimed was created by a contract between himself and SIU under Illinois common law.  Dkt. No. 29 at 4-10.  He also alleges a liberty interest and asserts that it entitled him to due process before being expelled before misconduct.  *Id.* at 10-13.  Hess further claimed that the law clearly protected his rights; therefore, Defendants were not entitled to qualified immunity.  *Id.* at 13-17.

On February 25, 2015, Hess filed a motion for summary judgment stating

> that there is no triable issue of fact as to liability as to the following claims: A) Plaintiff's Claim that his [sic] was not granted a predetermination hearing prior his [sic] suspension on December 11, 2013; B) That he was denied due process because, Defendant Trisler, who conduct his expulsion hearing, had prejudged his case, was biased against him, and Trisler thereby deprived Hess of a hearing before a neutral fact-finder; C) That Hess was denied substantive due process in that the evidence used to justify his expulsion was so attenuated and wanting in probative value and credibility that it shocks the conscience that Hess was expelled by [the University].

Dkt. No. 30 at 2-3.  On February 27, 2015, Defendants filed their own Motion for Summary Judgment.  Dkt. No. 32.  Therein, Defendants claimed that the undisputed evidence entitled them to judgment as a matter of law on all counts in Hess' Second Amended

3

Complaint.  *Id.* at 1-3.  Defendants contended that Hess does not have a property or liberty interest that entitled him to procedural due process because "[s]uch entitlement to post-secondary education does not exist independently of a contractual entitlement, and [Hess] has neither alleged nor established such an entitlement based on the undisputed record."  *Id.* at 2.

On March 30, 2015, Defendants responded to Hess' Motion for Summary Judgment.  Dkt. No. 33.  Defendants reiterated their argument that, on the undisputed evidence, Hess could not show that he had a property interest in his continuing college education.  *Id.* at 4-7.  Defendants also asserted that Hess failed to evidence any deprivation of a liberty interest.  *Id.* at 15-16.

On April 2, 2015, Hess filed his response to Defendant's Motion for Summary Judgment.  Dkt. No. 34.  Hess argued that he had adequately evidenced and/or alleged that SIU had breached a contract with him such that he had a protectable property and/or liberty interest, which was created under Illinois State law.  *Id.* at 4-5.

## B.  FACTUAL BACKGROUND[1]

In the early morning hours of November 28, 2013, the Marion, Illinois, police responded to a fight in progress at the Just One More Bar & Grill.  Pl.'s Ex. 1.  The officer who arrived first witnessed Hess chase a man across a parking lot and then punch the window of the man's vehicle.  *Id.*  Hess was subdued and detained for questioning, along with Hess' girlfriend, brother and sister.  *Id.*  Hess' companions claimed that the man Hess had been chasing had "wrestled" with Hess' brother and punched Hess' sister in the face. *Id.*  Hess' sister had no visible injuries.  *Id.*  After a brief period, Hess and his companions were released from the scene by the police.  *Id.*

After Hess left, the police learned that the chased man, Aaron Franks ("Franks"), had driven himself to the local hospital where he presented to the emergency room with multiple stab wounds.  *Id.*  Upon questioning, Franks gave a physical description for and described the clothing of the person who stabbed him.  *Id.*  The description matched that of Hess.  *Id.*  Hess admits that the description was "close" to his own.  Hess Dep. at 69-70.  Other men inside the bar who admitted to being involved in an altercation with Franks

---

[1] In his briefs, Hess makes reference to several "facts" without citation to evidence.  *See*, *e.g.*, Dkt. No. 31 at 3 (stating that "SIU apparently has a blanket exclusion rule for students charged with serious crimes, but it admits, that it will, from time to time, admits students who have felony convictions for serious bodily harm" and "Chancellor Cheng testified that these are reviewed on a case by case basis") & 6 (stating "Dean Sermersheim testified that Trisler had concluded that Hess was responsible prior to December 11, 2013").  The Court declines to consider those "facts" pursuant to Southern District of Illinois Local Rule 7.1(d).  Hess also fails to make specific citations to the record in the fact section of his Memorandum in Support of Plaintiff's Motion for Summary Judgment, Dkt. No. 31 at 7-11; the Court made every reasonable effort to decipher from the referenced exhibit the "facts" Hess sought to rely upon.  Only those facts for which the Court could readily find support in the referenced exhibit were considered.  It is not the Court's job to "hunt[] for truffles buried in [the record]."  *Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010). *See also Gutierrez v. Kermon*, 722 F.3d 1003, 1012 n.3 (7th Cir. 2013).

had blood on them; this information was in the police report regarding the incident at the Just One More Bar & Grill.  Pl.'s Ex. 1.

On December 4, 2013, Hess was charged with aggravated battery in Williamson County, Illinois, and a warrant issued for his arrest.  Defs.' Exs. 1 & 2.  Hess surrendered on December 9, 2013, and was released on bail later that day.  Hess Dep. at 18-19.

Hess testified that before the events on November 28, 2013, at the Just One More Bar & Grill, he knew Franks, but had no prior issues or problems with him.  *Id.* at 65.

On December 10, 2013, Trisler, Director of Student Rights and Responsibilities at SIU, learned that Hess had been arrested for allegedly stabbing a non-student during a bar fight.  Pl.'s Ex. 29 at 3; Defs.' Ex. 16, Trisler Decl. ¶ 4.  The next day, Trisler obtained and reviewed the police reports that described the officer's observations of Hess assaulting Franks and Franks' injuries and description of his assailant.  Defs.' Ex. 16, Trisler Decl. ¶ 5; Pl.'s Ex. 29 at 3.

The SIU Student Conduct Code ("Conduct Code") provides:

> If the Dean of Students, or designee, has reasonable cause to believe a student poses a serious and direct threat to the safety or well-being of one or more members of the campus community, or to the continued effective operation of the university, an interim action may be imposed to mitigate or remove the threat.  Any interim action is temporary and shall only be enforced until the completion of adjudication.

Pl.'s Ex. 27, at 14, § 3.1.

Based on the information provided to him by the Marion police department, Trisler contacted Sermersheim, SIU Interim Dean of Students, and recommended that an interim suspension be issued for Hess, pending a hearing on the matter.  Pl.'s Ex. 29, at 3.  Sermersheim agreed with Trisler's recommendation and issued the Interim Suspension the same day.  *Id.*

6

On December 11, 2013, the SIU police department contacted Hess by telephone and told him that he need to come to the department to receive a letter.  Hess Dep. at 19-20.  At the police station, Hess and his mother met with an SIU police officer and Trisler.  *Id.* at 24.  Trisler introduced himself to Hess and his mother and explained that the letter to Hess was a Notice of Interim Suspension.  *Id.* at 24.  The Notice advised Hess that SIU had received information that he was "alleged to have stabbed an individual several times in the course of a bar fight," and prohibited Hess from being present on SIU property or at SIU events until the interim suspension was lifted by the Dean of Students or through the Student Conduct Process.  *Id.* at 24; Defs.' Ex. 5.  The Notice was issued despite the fact that no one at SIU had asked Hess for his side of the story.  Hess Dep. at 24-25.

Trisler did not raise his voice or use profanity during the meeting with Hess and his mother, and he did not comment on whether he believed that Hess was guilty aside from delivering the notice of interim suspension.  Hess Dep. at 37-38.  Hess did not know Trisler prior to the events at issue and never had any prior disciplinary problems at SIU.  Hess Dep. at 35.  Hess does not know Trisler outside SIU and is unaware of any relationship Trisler had with the stabbing victim, Franks.  Hess Dep. at 35-36.  According to Hess, he asked Trisler why SIU was suspending him without hearing his side of the story, to which Trisler replied, "The University has not made a decision."  Hess Dep. at 24 -25.  Hess testified that throughout the encounter, Trisler was smiling, which prompted Hess to call Trisler a "smug prick."  Hess Dep. at 24-25.  Hess' mother questioned Trisler about whether SIU would treat "star athletes" the same way and asked Trisler why he was smiling.  Hess Dep. at 25.  When Trisler responded that everyone is treated the same, Hess' mother replied, "[B]ullshit."  Susan Hess Dep. at 14.  Further, Hess' mother

called Trisler a liar.  *Id.*  Hess' mother also asked whether or not Hess could take his finals, to which Trisler responded in the negative.  *Id.* at 18.

Trisler explained that in the course of his career at SIU he has delivered 150-200 Notices of Interim Suspension to students and described this one as "not particularly memorable."  Trisler Dep. at 144-45.  By that, Trisler meant that, when receiving such notices, students are frequently upset, if the student's family is present they are also upset, the students receiving such notices are often being investigated for criminal actions and to sum it up:  "They're not having a good night."  *Id.*  Trissler explained, "It's not unusual for people to be angry.  It's not unusual for there to be foul language.  It's not unusual for me to be threatened.  It's just the course of doing business when we're delivering interim letters usually in the middle of the night."  *Id.* at 145.

Trisler testified that after having delivering the interim notice he had not formed any conclusions as to Hess' responsibility or guilt and did not carry any biases against either Hess or his mother.  Trisler Dep. at 145.

On the same evening, December 11, 2013, Trisler informed Sermersheim about the Interim Suspension; Sermersheim, in turn, informed Cheng.  Pl.'s Ex. 2.  The email from Sermersheim to Cheng stated, in relevant part:  "I issued an interim suspension on Nicholas Hess tonight.  He is alleged to have been in a "bar fight" in Marion resulting in him being charged with attempted murder.  He allegedly stabbed a person 5 times.  He is from Marion and is a senior in journalism."  *Id.*  Sermersheim testified that she received that information from Trisler and that she believed they needed an interim suspension until they learned more.  Sermersheim Dep. at 25-26.  At the time, she was thinking that Hess might be a threat to the campus community as a whole, not to one particular

8

individual. *Id.* at 33-34.  In response to Sermersheim's email, Cheng responded, "Wow. Thanks to both you and Chad for the good work."  Pl.'s Ex. 2.

The Notice of Interim Suspension informs the student that, under the Student Conduct Code, he has a right to appeal an interim suspension action by requesting a hearing with the Dean of Students to be held within two days of the interim suspension. Hess Dep. at 41; Defs.' Ex 5.  Hess retained legal counsel the next day but did not request a meeting with the Dean to appeal the interim suspension.  Hess Dep. at 41.

On December 13, 2013, Hess received a Charge and Notification Letter advising him that he had been charged with violating eight provisions of the Conduct Code in connection with the events that took place on November 28, 2013, that led to his arrest. Hess Dep. at 44; Defs.' Ex. 7.  The letter identified each of the eight charges, and the basis for the charges.  Defs.' Ex. 7.  The charges included attempted homicide, physical assault, violent behavior, group actions, reckless disregard, reckless conduct presenting a danger to property, possession of a weapon, and disorderly conduct.  *Id.*  The letter informed Hess that he could either accept responsibility or deny responsibility and proceed with an administrative hearing.  *Id.*  Hess completed the "Statement of Responsibility Options" enclosed with the letter and requested an administrative hearing. Defs.' Ex. 8.

The hearing was set for January 17, 2014, and Hess was informed via letter that the hearing officer would be Trisler and that Hess had the right to call witnesses at the hearing.  Defs.' Ex. 9.  Hess never contacted SIU to object to Trisler being the hearing officer.  Hess Dep.at 49.

The hearing was held on January 17, 2014, as scheduled. Defs.' Ex. 9. Hess was represented by an attorney at the proceeding. Hess Dep.at 42. He was permitted to ask any question he wanted of each person that testified and his attorney was present throughout the hearing and wrote out questions for him to ask each witness. Hess Dep. at 51-53. Three witnesses testified: Officer Adam Bryne, Jenny Ozga (Hess' girlfriend), and Hess. Defs.' Exs. 14 & 15; Pl.'s Ex. 27A. Officer Bryne testified, among other things, that "there were separate incidents of battery that happened inside the bar that, uh, Mr. Hess was not involved with, I don't believe." Pl.'s Ex. 27A at 2; Defs.' Ex. 15 at 2. Officer Byrne also testified that at no point during the investigation of the incidents at the Just One More Bar & Grill on the evening of November 28, 2013, was there any evidence to suggest that Hess had a knife. Pl.'s Ex. 27A at 3; Defs.' Ex. 15 at 2. In fact, Officer Byrne testified that there was no evidence that Hess possessed any weapon. Pl.'s Ex. 27A at 3-4; Defs.' Ex. 15 at 3.

Hess was permitted to bring witnesses to the hearing. Hess Dep. at 49. Hess' brother and sister were both at the bar on the night of the stabbing, but Hess did not call them as witnesses. Hess Dep. at 50. *See*, *generally* Pl.'s Ex. 27A; Defs.' Ex. 15. Because of the criminal charges pending against him, on the advice of counsel, Hess chose not to discuss what occurred at the bar; but he was not prevented from doing so by SIU. Hess Dep. at 54; Trisler Dep. at 144; Defs.' Ex. 15 at 7. The hearing was recorded and a transcript made. Defs.' Exs. 14 & 15; Pl.'s Ex. 27A.

Trisler never talked with Franks. Trisler Dep. at 142.

Four days after the hearing, Trisler issued a notice of hearing decision that informed Hess that he had been found responsible for violating seven of the eight charged

10

disciplinary provisions of the Conduct Code and that Trisler had determined that disciplinary expulsion was the appropriate sanction under the circumstances. Hess Dep. at 56-58; Defs.' Ex 10. Trisler further explained that his decision was based on the police officer's observation of Hess' attempt to assault Franks; Franks' identification of Hess; and the unlikelihood that the same victim suffered a separate attack prior to the one by Hess that was witnessed by police officers. Defs.' Ex. 10. In particular, Trisler noted that "Franks was able to provide a conclusive description of the person who stabbed him, including approximate height, weight, hair color and length, build and clothing, all of which matched that of Hess at the police station following the incident." Pl.'s Ex. 16. Trisler testified that Franks' description that matched Hess "was the most telling evidence that he was involved." Trisler Dep. at 141.

The Conduct Code permits students to appeal determinations of responsibility. Pl.'s Ex. 27 at 23, § 4.4.5.5.6. Hess, again with the assistance of counsel, took advantage of that opportunity. Defs.' Ex. 8. Hess submitted an extensive written appeal claiming (1) procedural error in not delaying the proceedings until his criminal case was resolved and requiring Hess to represent himself with the assistance of his attorney as an advisor; (2) that there was no evidence to support the more serious charges (acknowledging that there was some evidence to support four of the charges); and (3) that the sanction of expulsion was excessive. Defs.' Ex. 12. In his appeal, Hess again did not claim that Trisler was biased or that he had sought an alternative hearing officer and had been denied that request. *See id.*

Pursuant to the Conduct Code, Hess' appeal was considered by a three member panel referred to as the Chancellor's Advisory Review Board who recommended to the

Chancellor that the decision be upheld.  Pl's. Ex. 27 at 26-29.  Cheng then considered Hess' appeal, the committee recommendation, and the file and agreed that there was no basis to change the finding of responsibility and sanction.  Pl's. Ex. 22; Cheng dep. at 18-19.

During the period between November 28, 2013, and December 11, 2013 (the date of Hess' interim suspension), Hess was on the SIU campus a minimum of 20 times without incident.  Pl.'s Ex. 38, Hess Aff. ¶¶ 2-3.  No one at SIU ever inquired about the number of times Hess had been on campus during that time period.  *Id.* ¶ 4.

## II. <u>STANDARDS</u>

### A.  MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) & 12(b)(6)

Defendants have moved to dismiss Counts I and II  of Hess' Second Amended Complaint as against the Board of Trustees and the remaining Defendants in their official capacities pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)"), for lack of subject matter jurisdiction.  Dkt. No. 28.  When such an assertion is made, although the burden of proof is on the party asserting jurisdiction, the Court must accept all well-pleaded facts alleged in the Second Amended Complaint and draw all reasonable inferences from those facts in Hess' favor.  *See Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999).

Under the Supreme Court's directive in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to survive Defendants' motion for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), Hess must provide the grounds for his entitlement to relief with more than labels, conclusions or a formulaic recitation of the elements of a cause of action.  *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286

12

(1986)).   Again, the Court assumes that all the allegations in the Second Amended Complaint are true, but the "allegations must be enough to raise a right to relief above the speculative level."  *Id.*  The touchstone is whether or not the Second Amended Complaint gives Defendants "fair notice of what the … claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The Court may also consider documents attached to the Second Amended Complaint and documents referenced therein, as well as take judicial notice of publicly available documents to decide the motion.  *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## B.  SUMMARY JUDGMENT STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990).  Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed.  Fed. R. Civ. P. 56(c)(1).  A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Goodman v. Nat'l Sec. Agency, Inc.*. 621 F.3d 651, 654 (7th Cir. 2010).  It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence.  *See Goodman*, 621 F.3d at 654; *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim.  *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994).  "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must

be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## III. <u>DISCUSSION</u>

### A. MOTION TO DISMISS BOARD OF TRUSTEES & OFFICIAL CAPACITY CLAIMS

Defendants assert that the Court does not have jurisdiction over Hess' claim for damages against the Board of Trustees and his official capacity claims for damages. Dkt. No. 28 at 4-5. Hess never really addresses this aspect of Defendants' Motion to Dismiss. Dkt. No. 29. The Court agrees with Defendants that the law is well-settled that the Board of Trustees and the individuals in their official capacities are claims against SIU, which is not a "person" under 42 U.S.C. § 1983, for purposes of money damages. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Kaimowitz v. Bd. of Trustees of Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir. 1991); *Shannon v. Bepko*, 684 F. Supp. 1465, 1474 (S.D. Ind. 1988). However, claims against Defendants in their official capacity for injunctive relief are not actions against the State. *See Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). For these reasons, Defendants' Motion to Dismiss Hess' claims for damages as to the Board of Trustees and the Defendants in their official capacities is **GRANTED in part and DENIED in part**.

Defendants have also moved to dismiss Hess' claims on the merits; however, because the Court has considered evidence outside of the Second Amended Complaint as to Defendants' merit argument in conjunction with their Motion for Summary Judgment, the Court converts the Motion to Dismiss on the merits to one for summary judgment. Both parties have moved for summary judgment and have responded to the others' argument; therefore, the notice usually required to convert a motion to dismiss to one for

summary may be suspended.  *Cf. Fleischfresser v. Dirs. of Sch. Dist. 200*, 15 F.3d 680, 684-85 (7th Cir. 1994) (discussing situations in which every party has reason to know when a court will convert a motion to dismiss to one for summary judgment).

## B.  DUE PROCESS CLAIMS

Hess asserts that he is entitled to summary judgment on his claims that Defendants violated his right to due process because they deprived him both of a property interest and a liberty interest in his education.  Dkt. No. 31 at 1-3.  Hess relies on *Pugel v. Board of Trustees of the University of Illinois*, 378 F.3d 659 (7th Cir. 2004), for the proposition that whether a student has a property interest or a liberty interest in his continued higher education is an open question.  Dkt. No. 31 at 1-2.  Hess then implies that several non-binding cases have concluded that a student has a cognizable interest in continued education such that due process is required before expulsion.  *Id.* at 2 (citing *Than v. Univ. of Tx. Med. Sch.*, 188 F.3d 633, 635 n.2 (5th Cir. 1999); *Crook v. Baker*, 813 F.2d 88, 97 (6th Cir. 1987); *Nash v. Auburn Univ.*, 812 F.2d 655, 660-61 (11th Cir. 1987); *Hall v. Med. Coll. of Ohio*, 742 F.2d 299, 308-09 (6th Cir. 1984); *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (1987); *Johnson v. Lincoln Christian Coll.*, 501 N.E.2d 1380 (Ill. App. 1986); *Steinberg v. Chi. Med. Sch.*, 371 N.E.2d 634 (Ill. 1977)).  Hess further asserts that Supreme Court opinions have held that students may have a personal liberty interest that entitles them to notice and an opportunity to be heard before expulsion.  *Id.* at 2-3 (citing *Bd. of Curators of the Univ. of Mo. v. Horwitz*, 435 U.S. 78, 82-85 (1978); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972)).  Based on these precedents, Hess presumes that he too had such interests that entitled him to a hearing prior to his suspension.  *Id.* at 3.  Hess also contends that Trisler was biased;

therefore, the process that he was given was unconstitutional. *Id.* at 4-6. Finally, Hess states that there is no material question of fact that SIU treated him arbitrarily in violation of the substantive due process clause. *Id.* at 6-11.

To the contrary, Defendants argue that they are entitled to summary judgment on Hess' due process claims. First, Defendants assert that there is no evidence that Hess had a property interest in his education and Hess has failed to show a genuine issue of material fact that Defendants deprived him of a liberty interest in his continued education. Dkt. No. 33 at 4-7, 15-16. Second, Defendants claim that, even if Hess had a protectable interest, he was given all the process he was due, including a neutral decision maker. *Id.* at 7-12. Third, Defendants aver that Hess has failed to evidence that the conclusion reached by Defendants "shocks the conscience," which is a necessary element of his substantive due process claim. *Id.* at 12-14.

A procedural due process claim under the Fourteenth Amendment requires a two-step analysis. "First, the court must identify the protected property or liberty interest at stake. Second, it must determine what process is due under the circumstances." *Charleston v. Bd. of Trs. of Ill. Univ.*, 741 F.3d 769, 772 (7th Cir. 2013) (citing *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003)). Stated another way, Hess "must establish that there is (1) a cognizable property interest; (2) a deprivation of that interest; and (3) a denial of due process." *Price v. Bd of Educ. of City of Chi.*, 755 F.3d 605, 607 (7th Cir. 2014) (quoting *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (further quotation omitted by Seventh Circuit)). The Fourteenth Amendment does not create a property right; rather, it "stem[s] from an independent source such as state law---rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

17

The Court concludes that Hess has not provided evidence that he had a legally protected entitlement to his continued education at SIU.  *See Charleston*, 741 F.3d at 773 (citing *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601-02 (7th Cir. 2009); *Williams v. Wendler*, 530 F.3d 584, 589-90 (7th Cir. 2008)).  Hess attempts to rely on an implied contract theory to support his claim.  Dkt. No. 31 at 2-3.  But, it is not enough for a student to merely state that an implied contract exists; rather, the student "must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return."  *Charleston*, 741 F.3d at 773.  In this case, when asked at his deposition to describe the terms of the contract between himself and SIU, Hess stated, "I was supposed to be a student and succeed and they were supposed to be there and they didn't."  Hess Dep. at 71-72.  In his briefing, Hess vaguely references the Code of Conduct and the implied contracts found in *Johnson*, 501 N.E.2d at 1384, and *Steinberg*, 371 N.E.2d at 640, apparently in an attempt to show that the Court should find a similar contract in this case.[2]  But in both *Johnson and Steinberg* the students articulated the specifics of the contract at issue and how it had been breached by the university.  *See Johnson*, 501 N.E.2d at 1384; *Steinberg*, 371 N.E.2d at 640.  In contrast, Hess has provided no particularized evidence from which the Court could imply that a contract existed between Hess and SIU regarding his continued education.

---

[2] Hess states that if the Seventh Circuit were aware of these cases, it would conclude that in Illinois all students have a property interest in their education.  Dkt. No. 31 at 2.  But that is not what *Johnson* and *Steinberg* hold; rather, those case distinctly find specific offers, acceptance and consideration in the facts presented that outline the parameters of the relevant implied contracts.  *Johnson*, 501 N.E.2d at 1384; *Steinberg*, 371 N.E.2d at 640.  Furthermore, *Charleston* was decided after both *Johnson* and *Steinberg*; therefore, if the Seventh Circuit wanted to announce a *de facto* rule on the issue of a property interest in secondary education in Illinois based on those cases it could have done so in that case.

Hess claims that he also had a personal liberty interest that could only be protected by a pre-interim suspension hearing. Dkt. No. 31 at 2-3 (citing *Bd. of Curators of Univ. of Mo. v. Horwitz*, 435 U.S. 78, 82-85 (1978); *Roth*, 408 U.S. at 573). More specifically, Hess contends that this interest included "his standing with his fellow students, his instructors, and the right to pursue further education at other institutions of higher learning." Second Am. Compl. ¶ 39. He alleges, too, that his Official Transcript of Academic Record ("Transcript") now states that he was expelled for disciplinary reasons and that having this notation with seriously impair his ability to get admitted to other universities. *Id.* ¶¶ 41-43. Defendants assert that Hess' bare assertions are not evidence that he was deprived of a liberty interest by any of them. Dkt. No. 33 at 15-16. *See also* Dkt. No. 32 at 17-18.

On summary judgment, Hess has failed to support the allegations in his complaint regarding any liberty interest of which he was deprived; therefore, his claim must fail. Generally, to evidence a loss of a liberty interest such that he is entitled to procedural due process, Hess must show that Defendants publically made defamatory statements about him that led to a tangible loss of opportunity for employment or education. *Strasburger v. Bd. of Educ.*, 143 F.3d 351, 356 (7th Cir. 1998); *Doe v. Bd. of Trs. of the Univ. of Ill.*, 429 F. Supp. 2d 930, 942-43 (N.D. Ill. 2006). Hess admits that no one stopped him from associating with other students at SIU, Hess Dep. at 12; that no Defendant publically disclosed his transcript, *id.*; and that he never applied to another school and was rejected, Hess Dep. at 7. Moreover, he presents no evidence that he was denied an employment opportunity because of any statement made in public by a Defendant. Therefore, it is

clear that Hess has failed to meet his burden of proof on summary judgment as to a liberty interest protected by the Due Process Clause.

Even if Hess had evidenced either a property interest through an implied contract or a protectable liberty interest, SIU provided all the process that he was due. Hess alleges three procedural deficiencies: the absence of a pre-interim suspension hearing; the bias of Trisler; and the lack of substantial evidence to support his expulsion. Dkt. No. 30 at 2-3. "[A]t a minimum [the Due Process Clause] require[s] that deprivation of . . . liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). Further, as the *Logan* court later stated, "'*some* form of hearing' is required before the owner is finally deprived of a protected property interest." *Logan*, 455 U.S. at 433 (quoting *Roth*, 408 U.S. at 570-71, n.8 (emphasis in original)).

In Hess' case, the information SIU had obtained on December 11, 2013, was that Hess had been arrested for allegedly stabbing a non-student during a bar fight. Defs.' Ex. 16, Trisler Decl. ¶ 5; Pl.'s Ex. 29 at 3; Pl.'s Ex. 2; Sermersheim Dep at 25-26 & 33-34. The evidence is that, based on this information, Trisler and Sermersheim had "reasonable cause to believe a [Hess] pose[d] a serious and direct threat to the safety of well-being of one or more members of the campus community . . . ." Pl.'s Ex. 29, at 3. This is just the type of circumstance for which an interim action could be warranted and is similar, if not more troubling, than the circumstances in *Medlock v. Trustees of the University of Indiana*, 738 F.3d 867 (7th Cir. 2013). In *Medlock*, the Seventh Circuit affirmed the district court's conclusion that a student's expulsion prior to a hearing was

not a violation of due process when the campus police located a large marijuana plant and a grow light in his dorm room along with a sizable quantity of marijuana and other drug paraphernalia in violation of the campus housing policy as well as state law.  *Id.* at 871.  The *Medlock* court stated: "The in-your-face flagrancy of [Plaintiff's] violation of university rules . . . and of Indiana's criminal law, required the university to take immediate remedial action if its commitment to its rules, and to legality, was not to be questioned." *Id.* (citing *Goss v. Lopez*, 491 U.S. 565, 581-83 (1975)).   Even the Supreme Court recognized in *Goss* that there will be circumstances where prior notice and a hearing is impractical.  *Goss*, 491 U.S. at 582-83 (discussing immediate removal of a student in cases where that student's "presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process" and noting the need to follow such removals with notice and a hearing "as soon as practicable").  *See also Gilbert v. Homar*, 520 U.S. 924, 934 (1997) (concluding that a public employee could be suspended without pay prior to a hearing based upon an arrest and formal charges, so long as the employee received a prompt and adequate post-suspension hearing).  Hess received notice of the reasons for his immediate interim suspension, and was provided information about how to challenge the interim action and was advised that any challenge would be addressed within two days. Hess Dep. at 24, 41; Defs.' Ex. 5.   Under the circumstances presented to SIU at the time, this procedure adequately protected Hess' right since the interim suspension applied only until completion of adjudication.  Pl.'s Ex. 27, at 14, § 3.1. The process for formal adjudication occurred quickly here since a formal notice was issued within two days of the interim suspension and a hearing was set on that notice for January 17, 2014.  Hess Dep at 42, 44; Defs.' Exs. 7 & 9.  At the hearing, Hess was

entitled to, and did, ask questions of any witness, call witnesses and testify himself if he wished.  Hess Dep. at 42, 44, 49, 51-53; Defs.' Exs. 7, 9, 14, 15; Pl.'s Ex. 27A.

However, notwithstanding the fact that Hess had the opportunity to appeal the interim suspension and did not do so, and the fact that Hess had the opportunity to object to Trisler presiding over the formal adjudication, Hess questions Trisler's impartiality. Specifically, he claims that, as a matter of law, Trisler was biased prior to the interim suspension because Sermersheim testified that Trisler had concluded that Hess was guilty of the underlying crime prior to December 11, 2013.  Dkt. No. 31 at 6.  Hess also alleges that Trisler was biased because of the derogatory comments Hess and his mother made to him when they learned of the interim suspension.  Second Am. Compl. ¶ 20. Hess compares his case to the circumstances in *Furey v. Temple University*, 730 F. Supp. 2d 380 (E.D. Pa. 2010).   In *Furey*, the evidence of potential bias included: (1) that a decision maker was friends with the testifying officer; (2) that another decision maker implied in comments to the plaintiff's father that he would believe a police officer solely on the basis of his profession; (3) another decision maker based his conclusion that the plaintiff was intoxicated during the incident in question on his own misreading of test results; (4) the entire panel of decision makers allowed the police officer to give a soliloquy regarding his investigation and a long narrative of the incident; (5) the panel refused to ask the police officer questions posed by the plaintiff; (6) in contrast to its treatment of the police officer, the panel aggressively cross examined the plaintiff and told the plaintiff and his mother to be quiet; and (7) the panel told his mother to "shut up" during the hearing. Dkt. No. 31 at 5-6 (citing *Furey*, 730 F. Supp. 2d at 387-89).  Defendants assert that there are no similar facts in this case from which a jury could infer bias.  Dkt. No. 33 at 10-12.

There is no question that a biased decision-maker renders a disciplinary process unconstitutional.  *See Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975); *Batagiannis v. W. Lafayette Cmty. Sch. Corp.*, 454 F.3d 738, 742 (7th Cir. 2006).  However, Hess must overcome "a presumption of honesty and integrity in those serving as adjudicators . . . ." *Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 715 (7th Cir. 2000) (quoting *Withrow*, 421 U.S. at 47).  "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification."  *Id.* (quoting *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982); citing *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973)).  For example, Hess must show that that Trisler had "a pecuniary interest in the outcome" or that "he [had] been the target of personal abuse or criticism from the party before him." *Withrow*, 421 U.S. at 47.

Here, Hess has nothing but bare allegations to support his claim that Trisler was biased.  Only a tortured reading of Sermersheim's testimony could lead to the conclusion that Trisler had already determined that Hess was guilty of the underlying crime prior to December 11, 2013.  The pertinent testimony reads:

> Q.  What was your understanding of what the charges were that had been lodged against Hess on December 11, 2013?

> A.  The information I had at the time was a bar fight, resulting in Mr. Hess stabbing another individual multiple times.

> Q.  Did you conclude that Hess had stabbed another individual multiple times?

> A.  At that time, based on the information we had, yes.

> Q.  Really?

> A. Yes.

23

Q.   You had concluded that Hess had stabbed another individual multiple times, correct?

A.  Yes.

Q.   Who told you that, that Hess had stabbed another individual multiple times?

A.   That was the information that we had at that time share with me by Chad Trisler.

Q.  Well, "we."  Who is "we"?

A.  Chad, uh, the information that was shared with him, which in turn, following our policy, when we believe there's information to suggest a threat to the university community, uh ---

Q. But my question is, did Chad Trisler tell you that he believed that Hess had stabbed another individual multiple times?

A.  Yes.  Based on not him believing [sic], but based on information that we had received through our community partners, uh, the information was shared that that is what was believed to have occurred at that time.

Sermersheim Dep. at 35-36.  She further testified:

Q.  From what you had been told by Trisler, you were satisfied that that's, in fact, what Hess had done, stabbed somebody?

A.  Based on the information I had on December 11 when this was issued, yes.

Q. And that came solely from Trisler?

A.  Uh, Trisler brought that information.

Sermersheim Dep. at 44-45.

As Sermersheim stated, perhaps poorly, the interim suspension was not based on Trisler "believing [that Hess had stabbed someone], but based on information that [they] had received through [their] community partners . . . that is what was believed to have occurred at that time."  Sermersheim Dep. at 36.  This is not the stuff of *Furey*, nor could

24

a jury be convinced by it that Trisler had prejudged the evidence such that it rendered the hearing unconstitutional.

With respect to Hess' allegation that Trisler must have been biased because Hess had called Trisler a "smug prick" and his mother had told Trisler one of his answers was "bullshit," Hess Dep. at 25, Susan Hess Dep. at 14, there is no evidence that Trisler had any negative feelings toward either Hess or his mother because of the comments. To the contrary, the only evidence is that Trisler did not recall the comments and even if he did, it would not have led him to make any conclusions about either Hess or his mother. Trisler Dep. at 96-98. Trisler testified that it is "not an unusual interaction to have with a student at the police department when issuing an interim suspension." *Id.* at 97. Hess' supposition about what Trisler must have thought is not evidence of bias and the attempt to compare this evidence to that in *Furey*, even in combination with Sermersheim's deposition testimony, is not close to the support needed for a finding of a bias "too high to be constitutionally tolerable." *Withrow*, 421 U.S. at 47.

With respect to a substantive due process claim, Hess argues that Defendants' decision to expel him after the hearing was so arbitrary that is shocks the conscience.[3] Dkt. No. 31 at 7. Hess appears to argue that the absence of evidence that he posed a threat to any particular member of the SIU community, and Trisler's failure to mention or discuss certain exculpatory facts in the police report, evidence the arbitrariness of the

---

[3] Hess did not plead a substantive due process violation in the Second Amended Complaint. *See*, *generally*, Second Am. Compl. However, because the parties addressed the issue on summary judgment, the Court will address it here.

decision.[4]  *Id.* at 7-11.  Defendants assert that Hess' disagreement with the decision does not make it arbitrary.  Dkt. No. 33 at 14.

The Court concludes that, on the undisputed facts, the circumstances in this case do not "shock the conscience."  The scope of the substantive due process clause is limited.  *See Dunn v. Fairfield Comm. High Sch. Dist No. 225*, 158 F.3d 962, 965 (7th Cir. 1998) (citing *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)).  The question is whether or not Defendants exercised their power without any reasonable justification.  *See id.*  In the case of the specific acts of Defendants, "'only the most egregious official conduct'" is arbitrary in the constitutional sense."  *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 118 S. Ct. 1708, 1716 (1998)).  In other words, the abuse of power must "shock the conscience."  *Id.* (discussing *Rochin v. California*, 342 U.S. 165 (1952), as reiterated in *Lewis*).  "'[C]onduct intended to injure in some way unjustifiable by *any* government interest' would be most likely to rise to the conscience-shocking level."  *Id.* (quoting *Lewis*, 523 U.S. at 849, 118 S. Ct. 1718 (emphasis added by Seventh Circuit)).

In this case, Hess was temporarily suspended from school pending further proceedings under the SIU conduct code.  Hess Dep. at 24, 44; Defs.' Ex. 5. He was afforded a hearing before an impartial decision maker at which he was allowed to ask questions, present witnesses and testify on his own behalf (even though he chose not to

---

[4] It was difficult to understand the evidence Hess claims support his substantive due process claim because he failed to make citations to evidence in his brief.  The Court made some effort to locate the relevant information, however, if the information was not readily located, the Court did not rely upon it on the basis that it is the party's burden to make the information available to the Court to support his or her case.  *See Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010); *see also Gutierrez v. Kermon*, 722 F.3d 1003, 1012 n.3 (7th Cir. 2013).

do so).  Hess. Dep. at 24, 44; Defs.' Exs. 5, 7, 9.  Further, he concedes that it would be reasonable to conclude that he violated 4 provisions of the Code of Conduct.  Defs.' Ex. 12.  There was ample evidence in the record to support the charges of violent behavior (fighting with Franks, chasing Franks and pounding on the car window), reckless disregard (chasing Franks, pounding on car the car window), reckless conduct presenting a danger to property (chasing after Franks and pounding on the car window), and disorderly conduct (participating in a fight outside of bar and chasing Franks across the parking lot).

Even if Hess, or the Court, disagrees with Defendants about the violation of the remaining three provisions, there was evidence in the record to support Trisler's conclusions that Hess had attempted to harm Franks, committed a physical assault and took group action.  Defs.' Ex. 10, Pl.'s Ex. 1.  Defendants aver that Hess' expulsion was supported by "some evidence," which is all that is required under the appropriate standard.  Dkt. No. 32 at 17 (citing *McDonald v. Bd. of Trs. of Univ. of Ill.*, 375 F. Supp. 95 (N.D. Ill.), *aff'd and opinion adopted* 503 F.2d 105 (7th Cir. 1974)).  Hess disagrees with Defendants' conclusion that Hess was responsible for "attempted homicide," or even a lesser violation, because "the evidence as a whole demands an opposite conclusion."  Dkt. No. 34 at 6-7 (citing *Austin v. Pazera*, 779 F.3d 437 (7th Cir. 2015)).  Hess also cites multiple prisoner cases where the reliability of the evidence supporting the conclusions was suspect.  *Id.* at 7 (citing *Hensley v. Wilson*, 850 F.2d 269, 275-76 (6th Cir. 1987); *Dawson v. Smith*, 719 F.2d 896, 899 (7th Cir. 1983), *cert. denied*, 466 U.S. 929 (1984); *Howard v. Wilkerson*, 768 F. Supp. 1002 (S.D.N.Y. 1991)).  He claims that Trisler should have talked with Franks rather than relying on Franks' hearsay identification of his

assailant.  *Id.*  In addition, Hess claims that suspension and expulsion was too harsh a sanction for violations like a bar fight.  *Id.* at 6-7.  But, the standard, as Hess concedes, is whether there is "some evidence" to support SIU's conclusion.  *See id.* at 7 (citing *Amaya v. Brater*, 993 N.E.2d 311 (Ind. Ct. App. 2013)).  Here, the facts were that Hess and his brother had confronted Franks outside the bar, Hess chased Franks to the car, Hess pounded on the car window until a police officer tackled him, and Franks presented to the hospital with multiple stab wounds and gave a description of his assailant that closely matched that of Hess.  Therefore, even if another decision maker would draw a different conclusion from the evidence, for example, that another altercation occurred inside the bar that may have involved Franks, there is some evidence to support Trisler's conclusion that Hess had committed a crime against Franks that could have produced serious bodily injury.

In summary, Trisler's decision to expel Hess for 7 violations of the Code of Conduct is not "shocking" enough to meet the constitutional standard and the Court will not re-litigate the evidentiary foundation for the decision.  *Accord Tun v. Whitticker*, 398 F.3d 899, 903-04 (7th Circ. 2005) (discussing the questionable judgment of the state actors in that case, but refusing to conclude that the decision violated the substantive due process rights of the plaintiffs).  Further, as the *Dunn* court stated, "One is tempted to say that if a police officer's 'precipitate recklessness,' which caused the deprivation of someone's life, was not sufficiently shocking to satisfy substantive due process standards, then it would be nearly absurd to say that [Defendant's decision to expel Hess for seven violations of the Code of Conduct] did." 158 F.3d at 965 (referencing the facts and conclusion in *Lewis*).

28

## C.  QUALIFIED IMMUNITY

Defendants assert that they are qualifiedly immune from Hess' claims against them individually for damages.  Dkt. No. 32 at 18-19.  Specifically, Defendants argue that Hess cannot show that a constitutional violation occurred.  *Id.* (citing *Coady v. Steil*, 187 F.3d 727, 731 (7th Cir. 1999)).  *See also* Dkt. No. 28 at 15.  Defendants also aver that a reasonable state actor would not have known that her actions were unlawful viewed in light of the law at the time.  Dkt. No. 28 at 15 (citing *Nabozny v. Plodlesny*, 92 F.3d 446, 456 (7th Cir. 1996)).  Hess contends that the law was sufficiently clear that he was entitled to an impartial decision maker and that a disciplinary decision needed to be supported by "some evidence" to satisfy due process; therefore, Defendants are not entitled to qualified immunity.

Hess' barebones argument is flawed with respect to his procedural due process claim because he has failed to evidence that he had either a property or a liberty interest in a continued education at SIU and, even if he had, he was given all the process he was due as a matter of law.  Further, there is no material question of fact that Trisler was unbiased.  The fundamental question on Hess' procedural due process claim is whether or not Hess had a property or liberty interest that had been violated.  The law in this area is not well-settled and the inquiry to date has been a case-by-case analysis of the individual's interest at stake and the potential contractual relationship of the individual to the state actor.  Therefore, with respect to Hess' procedural due process claim, Defendants are qualifiedly immune from suit.

With respect to his equally sparse argument on Hess' substantive due process claim, the Court agrees that the standard on that claim is clear; however, the application

of that standard to the facts of this case are equally clear:  there was no substantive due process violation by Defendants.  As such, Defendants are qualifiedly immune from suit as to Hess' substantive due process claim.

## IV.  **CONCLUSION**

For the reasons stated herein, Defendants', the Board of Trustees of Southern Illinois University, Chad Trisler, Katherine L. Sermersheim and Rita Cheng, Motion to Dismiss is **GRANTED in part and DENIED in part**; Defendants', the Board of Trustees of Southern Illinois University, Chad Trisler, Katherine L. Sermersheim and Rita Cheng, Motion for Summary Judgment is **GRANTED**; Plaintiff Nicholas Hess' Motion for Summary Judgment is **DENIED**.  The Court will enter judgment consistent with this Order.

IT IS SO ORDERED this 9th day of December, 2015.


LARRY J. McKINNEY, JUDGE
Sitting by Designation
United States District Court
Southern District of Illinois

Distribution:

Darrell W. Dunham
Law Offices of Darrell Dunham
darrell.dunham@gmail.com

Thomas H. Wilson
HeplerBroom LLC - Springfield
thw@heplerbroom.com

Jessica L. Galanos
HeplerBroom LLC - Springfield
jlg@heplerbroom.com